**In the United States District Court<br>
for the<br>
Western District of Texas**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | SA-11-CR-741-XR |
| JOSE V. MOLINA | § | |

**ORDER**

On this day came on to be heard Defendant's motion to suppress (docket no. 42).

On August 15, 2011, Texas DPS Commercial Vehicle Enforcement Trooper Juan DeLeon was working at the northbound scale house/weigh station in Medina County on IH-35. All commercial vehicles were required to exit IH-35 and enter the weigh station.

In the weigh station area, Trooper DeLeon made a random stop of a northbound green Freightliner Truck Tractor towing a box trailer. Trooper DeLeon instructed the driver, later identified as Jose V. Molina, to pull over to the inspection area.[1]

Trooper DeLeon made contact with the Defendant and asked him for his logbook. The Trooper noticed that he had driven from Brownsville, Texas to Laredo, Texas. The Trooper asked the Defendant what he was hauling in the trailer. The Defendant replied that he was carrying spinach. The Trooper asked the Defendant for his shipping papers and noticed that he picked up the load of spinach in Brownsville, Texas and the destination for the spinach was in Pennsylvania. Trooper DeLeon asked the Defendant if the origin and destination of the spinach were correct. He stated they were. The Trooper asked the Defendant why was he on IH-35 instead of heading north from Brownsville to Pennsylvania. The driver stated he drove to Laredo,

---

[1] To the extent that the Defendant is arguing there was no probable cause to stop the vehicle, this objection is overruled. *See* Tex. Transp. Code 644.103, et seq.; *see also U.S. v. Fort*, 248 F.3d 475, 482 (5th Cir. 2001) ("warrantless stop and inspection of Fort's commercial vehicle were valid under *Burger* 's regulatory exception to the warrant requirement.").

Texas to visit family. The Trooper asked the Defendant if his company was aware of him driving to Laredo to visit family. He stated his boss was a good friend and approved. When questioning the driver, the Trooper noticed the Defendant would not make eye contact.

Trooper DeLeon started his "walk around" inspection of the truck tractor and semi-trailer. When he reached the rear of the trailer, the Trooper checked the aluminum integrity seal that was secured on the door of the trailer. The Trooper noticed the seal number did not reflect the seal number that was on the shipping paper.

Trooper DeLeon instructed the driver to exit the truck tractor and open the engine hood so the Trooper could inspect the engine compartment. After he was done inspecting the engine compartment, the Trooper asked the Defendant if he was by himself and if there was anything illegal inside. The Defendant stated he was alone and there was nothing illegal inside the truck tractor.

Trooper DeLeon believed the Defendant was engaging in some type of criminal activity due to his demeanor (not making eye contact), the different seals, and his route of travel. Trooper DeLeon asked the Defendant for verbal consent to search the cab/tractor and the Defendant gave consent[2] to search.[3] Trooper DeLeon entered the truck tractor and noticed there was a black suitcase in the sleeper area. Trooper DeLeon unzipped a pocket of the suitcase[4] and noticed the

---

[2] The Defendant argues that no consent to search was given by him. To the extent he is alternatively arguing that his consent was not voluntary, the Court has considered the totality of the circumstances (Defendant was not in custody, there were no coercive police procedures used, the Defendant was cooperative, and given the Defendant's prior criminal history he was aware that he could have refused consent) and finds that the Defendant provided voluntary consent. *See U.S. v. Arias-Robles*, 477 F.3d 245 (5th Cir. 2007).

[3] Defendant Molina testified at the suppression hearing that Trooper DeLeon did not request consent to search the cab and no consent was given. The Defendant testified that Trooper DeLeon just went inside. The Court finds the Defendant's testimony unreliable and not persuasive. The Defendant has previously been convicted on four different occasions (1989 burglary convictions; 1997 possession of marijuana; 1998 possession of marijuana; and 2007 possession of marijuana). The Defendant understands that he is looking at a long number of years if he is convicted on these pending charges.

[4] Trooper DeLeon did not specifically request consent to search the suitcase and relied upon the general consent earlier given by the Defendant. An affirmative response to a general request is evidence of general consent to

Defendant had a box containing seals. DeLeon examined the seals and noticed they were the same brand (J J Keller) and number sequence as the seal on the trailer door.

After the Trooper finished searching the cab/tractor, he asked the Defendant if he was present when the cargo was loaded into the trailer. The Defendant stated he was present. Again the Trooper asked if he was present, and the Defendant then stated that he wasn't present. He then stated he was in the truck tractor as the cargo was being loaded into the trailer. Trooper DeLeon asked the Defendant if he secured the seal on the trailer door. The Defendant stated he did not put the seal on the trailer door.

The Trooper asked the Defendant if he could search the trailer.[5] The Defendant hesitated, but then gave consent.[6] Defendant never withdrew or limited the consent to search. Trooper DeLeon requested assistance from another Trooper to assist in the search of the semi-trailer. Trooper DeLeon broke the seal on the trailer, climbed into the trailer and noticed that there was a cardboard box with different labeling sitting on top of the boxes that contained the spinach. Trooper DeLeon illuminated the left rear of the trailer with his flashlight and noticed there were four boxes sitting on the floor of the trailer. The cardboard boxes had cellophane wrapped around them. The Trooper uncovered one of the boxes on the floor and noticed it contained several bundles wrapped in cellophane. From past experience and training, Trooper DeLeon suspected that these bundles contained contraband. Trooper DeLeon instructed Trooper Garcia to secure

---

search. The Defendant did not qualify his consent to the Trooper, who therefore had general consent to search the truck. *U.S. v. Garcia*, 604 F.3d 186, 190 (5th Cir. 2010).

[5] The Government argues that consent to search was not required because Tex. Transp. Code Section 644.103 and 644.104 allow a DPS Trooper to enter a motor carrier without the consent of the motor carrier. The Court need not reach that argument because here consent was voluntarily given.

[6] Defendant Molina testified at the suppression hearing that Trooper DeLeon did not request consent to search the trailer and no consent was given. The Defendant testified that he told the Trooper that he (Trooper DeLeon) needed to sign the bill of lading if he was going inside the trailer, but that the Trooper just cut the seal and entered the trailer. Again, the Court finds Defendant Molina's testimony unreliable.

the Defendant. Trooper Garcia placed hand restraints on the Defendant. Trooper DeLeon cut into one of the bundles and noticed it contained a green leafy substance.

The Trooper exited the trailer and read *Miranda* rights to the Defendant.[7] The Defendant acknowledged his understanding of those rights. Trooper DeLeon contacted DPS Communications and they notified a Texas Department of Public Safety Criminal Intelligence Agent. The Defendant stated he wanted an attorney. While the Troopers and the Defendant were waiting for the Criminal Investigations Agent to arrive, the Defendant initiated contact with Trooper DeLeon, waived his right to an attorney, and stated he wanted to talk and "help himself."[8] The Defendant then admitted he was aware of the contraband inside the trailer, and he acknowledged the boxes contained marijuana.

Prior to arriving to the scene, DPS Agent Lucian Ebrom called Trooper DeLeon. Trooper De Leon informed Agent Ebrom that he had a suspected marijuana load and that the suspect had "lawyered up." When Agent Ebrom arrived at the scene, Trooper DeLeon advised Agent Ebrom that Molina had initiated contact and decided to talk and waive his right to an attorney.[9]

Prior to interviewing the Defendant, Agent Ebrom advised Molina of his *Miranda* rights, and Molina acknowledged his understanding of those rights. Agent Ebrom also established from Molina that after he invoked his right to counsel before Trooper DeLeon, he voluntarily reinitiated contact with Trooper DeLeon and advised the Trooper that he wanted to make a

---

[7] In the later audiotape statement that the Defendant provided (*see* Gov't Ex. S-1), Agent Ebrom reminded the Defendant that he had previously been given *Miranda* warnings by Trooper DeLeon. Defendant did not dispute this fact.
[8] The Defendant during the suppression hearing testified that he "lawyered up," and that Trooper DeLeon approached him and asked him if he wanted to cooperate. The Defendant argues that he never waived his *Miranda* rights. Again, the Court finds the Defendant's testimony unreliable on this point. The subsequent audiotape recording has Defendant admitting that he initiated the contact ("Yes"; "I asked him") with Trooper DeLeon after he initially requested an attorney. Agent Ebrom asked direct questions on this topic and the Defendant clearly understood the questions. Defendant waived his right to counsel when he voluntarily reinitiated a conversation with Trooper DeLeon after having first requested counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).
[9] Trooper DeLeon's statement is corroborated by the Defendant in the audiotape statement.

4

statement and get some kind of deal. The discussion with Agent Ebrom was audio recorded. In this recording Agent Ebrom was extremely clear and direct. During the interview, the Defendant never withdrew his consent and never limited the scope of the conversations.[10]

**Conclusion**

Defendant's motion to suppress (docket no. 42) is DENIED.

SIGNED this 22nd day of May, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[10] The Defendant argues that he told Agent Ebrom at one point "just take me to jail." This statement was made in the middle of Agent Ebrom's explanation of the potential impact of Defendant approaching Trooper DeLeon after he had initially requested an attorney. Agent Ebrom informed the Defendant that he could not speak with him if Trooper DeLeon approached him after he requested counsel. Defendant clearly stated that he approached the Trooper. Agent Ebrom had just completed reading the *Miranda* warnings and specifically told the Defendant he had a right to remain silent, a right to a lawyer and that he could terminate the interview at any time. Defendant informed Agent Ebrom that he was willing to talk with him. His one reference to "just take me to jail," which was followed by his continuing to talk with Agent Ebrom did not constitute an invocation of his right to remain silent and request for counsel. *See U.S. v. Mendoza*, 2013 WL 1151913 (5th Cir. Mar. 11, 2013); *U.S. v. Carrillo*, 660 F.3d 914, 922 (5th Cir. 2011).